IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIMBERLY J. EDWARDS,

      Plaintiff,                      No. CIV S-05-0222 PAN

      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                <u>ORDER</u>

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings consistent with this order.

/////

/////

/////

I. <u>Factual and Procedural Background</u>

In a decision dated September 10, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of depression and borderline intellectual functioning, but that these impairments do not meet or medically equal a listed impairment; plaintiff's testimony was not substantially credible; plaintiff has the residual functional capacity to perform work-related activities except for work involving understanding, remembering, and carrying out of job tasks in excess of those that are of a simple, routine unskilled nature; plaintiff's impairments did not prevent her from performing her past

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

1  relevant work; and plaintiff is not disabled.  Administrative Transcript ("AT") 13-14.  Plaintiff
2  contends that the ALJ improperly ignored critical aspects of the opinions of plaintiff's examining
3  physicians; failed to credit the testimony of plaintiff, her sister, or the Social Security
4  representative; improperly determined that plaintiff could perform her past relevant work; and
5  erred by failing to consult a vocational expert.

6  II.  Standard of Review

7        The court reviews the Commissioner's decision to determine whether (1) it is
8  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the
9  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing
10 Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).
11 Substantial evidence means more than a mere scintilla of evidence, but less than a
12 preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.
13 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a
14 reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402
15 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.
16 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,
17 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that
18 detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.
19 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of
20 supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If
21 substantial evidence supports the administrative findings, or if there is conflicting evidence
22 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see
23 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
24 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d
25 1335, 1338 (9th Cir. 1988).
26 /////

III.  <u>Analysis</u>

    a.  <u>The ALJ properly weighed the medical opinions.</u>

The ALJ found plaintiff suffering from the severe impairments of depression and borderline intellectual functioning.  AT 13.  According to the ALJ, these impairments limited plaintiff to performing simple, routine unskilled work.  <u>Id</u>.  This conclusion was based in part upon the ALJ's interpretation of the medical opinions of several examining physicians.  Given the ALJ's evaluation of the medical evidence in this case, this conclusion was in error.

The ALJ made no explicit finding as to the credibility he gave to the opinions of plaintiff's doctors.  Such weighing was necessary given the inconsistency between plaintiff's complaints and the findings of the examining physicians.  20 C.F.R. § 416.927(c)(2).  For instance, plaintiff complained of poor memory.  AT 86, 296.  However, the examining psychologist, Dr. Koulianos, found plaintiff's memory to be grossly intact.  AT 103.

In addition, the internal inconsistency within Dr. Koulianos' opinion required the ALJ to weigh that opinion.  20 C.F.R. § 416.927(c)(2).  Dr. Koulianos found plaintiff's affect to be "broad."  AT 103.  However, in the next section of her report, she stated that plaintiff's affect was "constricted."  <u>Id</u>.  Such inconsistencies require a comprehensive evaluation by the ALJ.

The ALJ is required to evaluate all of the medical opinions he receives.  20 C.F.R. § 416.927(d)(2).  Implicit in this requirement is that he evaluate those opinions accurately.  Indeed, for treating source opinions, the ALJ is required to give "good reasons" for their rejection.  20 C.F.R. § 416.927(c)(2); SSR 96-2P.  The ALJ did not do so in this case.

The ALJ gave no indication of the weight given to the various medical opinions in the case.  Given the nature of his findings, it appears as if he gave great weight to the opinions of the examining doctors.  However, this cannot be determined with certainty because the ALJ misstated the findings of Dr. Koulianos by failing to accurately note her conclusions.  As a result of this mischaracterization of the evidence before him, the ALJ's opinion is not supported by substantial evidence in the record.

4

Dr. Koulianos found plaintiff able to execute simple and uncomplicated routine one or two step job instructions without significant difficulty. AT 104. In many ways, the ALJ simply repeated this finding when he stated that plaintiff was capable of "simple, routine unskilled work."[2] AT 12. Unfortunately, the ALJ failed to adequately recognize the critical qualifications attached to Dr. Koulianos' opinion.

The ALJ stated that Dr. Koulianos found plaintiff "fully capable of understanding, remembering, and carrying out simple and uncomplicated job instructions." Id. However, this statement mischaracterizes Dr. Koulianos' assessment of plaintiff. In fact, Dr. Koulianos did not unflinchingly describe plaintiff as "fully capable," but rather, she remained guarded in her assessment, only conditionally endorsing plaintiff's abilities and noting that her ability to routinely perform simple tasks was "uncertain." AT 104. Under Dr. Koulianos' view, plaintiff was capable of performing simple tasks; however, her ability to perform them consistently from one day to the next was uncertain.

In addition, the ALJ stated that Dr. Koulianos found plaintiff "fully capable" of handling minor work stresses. AT 12. However, Dr. Koulianos found plaintiff's ability to "manage transitions or the minor stressors associated with employment" to be "variable." AT 104. The ALJ's assertion that Dr. Koulianos found plaintiff unlimited in her ability to react to minor stresses was not an accurate depiction of the evidence in the record.

The ALJ is charged with fairly evaluating all of the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Included in this obligation is the responsibility to analyze, consider, and properly weigh the evidence that detracts from the ALJ's ultimate conclusion. Id. The failure to accurately evaluate the record in its entirety can be error. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(concluding that the failure to accurately

---

[2]Unskilled work needs little or no judgment to perform simple duties and can generally be learned on the job in 30 days or less. 20 C.F.R. § 404.1568(a). Unskilled work does not require working with people. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85-15. A plaintiff does not gain work skills by performing unskilled work. 20 C.F.R. § 404.1568(a)

5

paraphrase the record material was error); Holohan v. Massanari, 246 F.3d 1195, 1203-05 (9th Cir. 2001)(reversing adverse credibility finding where the ALJ selectively quoted doctor's records out of context).

The discrepancy between Dr. Kulianos' opinion and the restatement of that opinion by the ALJ may appear to be a minor matter of semantics. See Sarchet v. Chater, 78 F.3d 305, 308-09 (7th Cir. 1996)("When the decision of [the] tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event remand would be pointless.")  However, given the nature of unskilled work, there is in fact an important distinction to be drawn from Dr. Koulianos' opinion.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions;...and to deal with changes in a routine work setting." Social Security Regulation (SSR) 85-15; cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations"). Uncertainty about plaintiff's ability to sustain effort, and variability in plaintiff's response to routine changes are essential factors in the determination of whether plaintiff can in fact perform unskilled work.

Furthermore, the opinion of Dr. Koulianos takes on added import given that it is one of the few medical evaluations in the record.  Indeed, Dr. Koulianos' examination appears to be the only one conducted by a qualified mental health profession.  Proper analysis of Dr. Koulianos' opinion in light of these facts is critical.

In addition to Dr. Koulianos, the ALJ also reviewed the other medical evaluations contained in the record.  The ALJ properly characterized the evidence offered by plaintiff's other examining physician, Dr. Stansell.  While the record does not reflect Dr. Stansell's area of practice, it is apparent that he conducted a thorough physical evaluation.  However, his focus appears to be on plaintiff's physical complaints as opposed to her mental impairments.

In his conclusions, Dr. Stansell found plaintiff slightly limited in her ability to work. Unlike Dr. Koulianos, Dr. Stansell noted that plaintiff's was limited only by her depression and unease around other people, not an inability to perform the required task or respond to workplace stress. AT 136.Dr. Stansell concluded that plaintiff suffered from chronic depression and hallucinations. AT 137.

The ALJ's conclusion that plaintiff is capable of simple, routine unskilled work is consistent with Dr. Stansell's findings. Unskilled work typically involves dealing with things rather than people. SSR 85-15. The aversion to coworkers or the public found by Dr. Stansell to be a limiting factor in plaintiff's ability to maintain employment is adequately captured in the ALJ's finding that plaintiff is capable of unskilled work.

Non-examining doctors from the State Agency also evaluated plaintiff's medical record. The ALJ accurately noted that these doctors found plaintiff mildly limited in her daily living activities and social functioning and moderately limited in her ability to maintain concentration, persistence, and pace. AT 12. The State Agency found that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and to interact appropriately with the public. AT 105-06.

This evaluation is also consistent with the ALJ's conclusions. Unlike Dr. Koulianos, the State Agency doctors expressed no qualifications on plaintiff's abilities. As a result of the requirements of unskilled work, the mild and moderate limitations noted by the State Agency do not significantly detract from plaintiff's ability to perform in the workplace.

Given the nature of the opinions in this case, the ALJ's review of the medical evidence was incomplete and inaccurate. There was no weighing of the medical evidence in the record in spite of its own internal contradictions as well as those with plaintiff's testimony. Furthermore, the ALJ misstated the conclusions of Dr. Koulianos. Remand is required in order to permit the ALJ to adequately and accurately evaluate the evidence. Continuation of the sequential analysis may be necessary based upon his updated findings.

b. The ALJ's Assessment of Plaintiff's Credibility and the Evidence Provided by Third Party Witnesses was not in Error.

The ALJ found plaintiff's testimony not substantially credible. AT 12. In addition, he gave little apparent weight to the evidence provided by third-party lay witnesses. This was not in error. The ALJ gave sufficient reasons supported by substantial evidence in the record to support his evaluation of plaintiff's and the third-party lay witnesses' testimony.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional

1  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ
2  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,
3  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900
4  F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the
5  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
6  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7  Objective evidence supports plaintiff's contention that she is disabled by her
8  depression and borderline intellectual functioning.  This evidence includes the plaintiff's limited
9  medical history and the results of her examinations by Dr. Koulianos and Dr. Stansell.
10 Furthermore, there is no evidence of malingering.  Faced with this objective evidence of
11 impairment, the ALJ provided multiple reasons supported by substantial evidence to give less
12 than full weight to plaintiff's complaints.

13 While objective evidence exists that provides some basis upon which to conclude
14 plaintiff suffers from a mental impairment, the ALJ noted the lack of findings, diagnoses, or
15 treatment that could support symptoms as severe as those alleged by plaintiff.  As noted above,
16 the examining physicians found plaintiff capable of some level of work, although the differed in
17 degree and the source of plaintiff's nonexertional limitations.  This finding was bolstered by the
18 non-examining physicians at the State Agency who concluded plaintiff was not more than
19 moderately limited by her depression or borderline intellectual functioning.  AT 127.

20 Furthermore, the ALJ found the lack of treatment for plaintiff's mental
21 impairment undermined her credibility.  AT 12.  Despite recommendations for mental health
22 treatment by Dr. Stansell, AT 138, the evidence is devoid of such follow-up care.  Furthermore,
23 there is no indication that plaintiff continued to receive treatment from Dr. Stansell as
24 recommended.  Id.  Finally, the record lacks any evidence that plaintiff sought emergency care
25 for any medical ailment associated with her claim of disability.

26 In cases of mental impairment, the failure to seek treatment is not a substantial

1  basis upon which to conclude that plaintiff is not credible. Nguyen v. Chater, 100 F.3d 1462,
2  1465 (9th Cir. 1996). Due to the nature of mental illness, many of those afflicted with depression
3  fail to seek treatment because they do not recognize the seriousness of their condition. Id.; see
4  e.g. Warren E. Leavy, *Hidden Depression*, Chi. Trib., Feb. 1, 1996 at 7. Chastising a plaintiff for
5  failing to resolve a problem that they may not recognize as an illness is "a questionable practice."
6  Nguyen, 100 F.3d at 1465 (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

7  However, this is not a case where plaintiff was unaware of her needs. Plaintiff's
8  testimony indicated that she felt no need to receive ongoing care. Plaintiff testified that she was
9  aware that she could seek treatment from Primary Care in Sacramento or the Sacramento Family
10 Clinic. AT 283. However, plaintiff refused to seek additional treatment from any of the services
11 available to her, complaining of "getting sick" following treatment at Primary Care, or not
12 receiving any notification of the need for follow up after being tested at Sacramento Family
13 Clinic. Id.

14 Plaintiff also admitted that she self-medicated. AT 276. Plaintiff received
15 Valium from a friend, using it to help her relax and feel better. Id. Given plaintiff's efforts to
16 acquire prescription narcotics in a less than lawful fashion, it cannot be said that she was unaware
17 of the benefits that might come from receiving professional medical treatment. The ALJ's
18 utilization of this factor in assessing plaintiff's credibility was not in error.

19 The ALJ also found no evidence of ongoing prescription drug care for plaintiff's
20 depression. AT 12. Plaintiff testified that she previously took Zoloft, an anti-depressant, to help
21 her sleep; however, her prescription had not been refilled. AT 84, 132, 277. The medical record
22 shows no evidence that plaintiff was prescribed Zoloft or any drug designed to treat her mental
23 health problems. AT 101, 111, 253, 259.

24 The ALJ also noted that the medical record failed to show any need for
25 hospitalization. Plaintiff's only time spent in the hospital was for treatment of peritonitis and a
26 tuboovarian abscess, as well as an appendectomy. AT 143. Treatment notes show that plaintiff

made no complaints consistent with mental impairment during her 42-day stay, nor did she show any signs sufficient to concern her treating physicians. In fact, upon entry into the hospital, plaintiff was described as "very pleasant," AT 253, and "oriented," AT 254.

Furthermore, the ALJ found no evidence that any doctor recommended that plaintiff not work. While opinions of disability are reserved exclusively for the Commissioner, statements by doctors that a plaintiff is "unable to work" may support an ALJ's conclusions. 20 C.F.R. § 416.927(e)(1). No such statements by any medical source appear in the record. Indeed, all of the examining physicians found plaintiff capable of some type of employment. AT 104, 114, 136.

The evidence in the record also shows that plaintiff was less than consistent with her allegations. The internal inconsistencies within plaintiff's own statements, as well as the contradictions between plaintiff complaints and the evidence provided by lay witnesses casts further doubt upon the nature of plaintiff's complaints. These inconsistencies are one of the ordinary techniques of credibility evaluation that an ALJ may utilize. Smolen, 80 F.3d at 1285.

Plaintiff described few daily activities, noting that she no longer was able to do the things she "used to do." AT 290. She stated that she remained primarily "isolate[d]," occasionally talking to her mother. AT 84. In fact, plaintiff stated that she had to be "pushed out of the house" by her mother on the one or two occasions during the week that she got out. AT 86. Plaintiff consistently answered "no" when asked if she did any basic household chores, including changing the bed sheets, doing laundry, vacuuming, mopping the floor, or cleaning the bathroom, AT 272; however, she did state previously that she washed the dishes, AT 85. Plaintiff stated that her typical day involved, "look[ing] at TV," AT 275, and that she had no hobbies, played no sports, did not go to the movies or restaurants, and only went to church when her sister took her, AT 273-75. Plaintiff testified that she made one large trip to the grocery store every month accompanied by her mother or sister and that she makes the trip "as quick as possible." AT 273.

Third party witnesses described slightly more activity. Plaintiff's friend stated that she frequently walked around the neighborhood and visited with neighbors, AT 64, and that plaintiff left the house at least once a day, AT 66. In addition, plaintiff was described as being able to cook simple meals, AT 65, sweep the porch, AT 66, go shopping every two days, AT 65, and read the newspaper, AT 67.

Plaintiff stated that she had no friends, AT 274-75; however, she later corrected herself, stating that she meant to say that she had no "new friends," AT 276. In fact, plaintiff described two friends who supplied her with Valium, drove her to appointments, and helped her maintain her apartment. AT 276-78. Plaintiff's complaints of loneliness and inactivity cannot be reconciled with her apparent ability to interact with the community and to maintain acquaintances who consistently assisted plaintiff with everyday tasks.

In addition, plaintiff stated that her memory was poor. AT 86. However, Dr. Koulianos found that plaintiff's remote and recent memory were intact as plaintiff was able to recall items immediately and after five minutes. AT 103. Plaintiff was also able to remember without any difficulty what she did one day prior. AT 103.

Plaintiff's testimony regarding her condition was not the only non-expert evidence in the record. Two third-party questionnaires as well as a field report were submitted in plaintiff's initial application for benefits. While varying in some important aspects, all of these lay witness documents describe general overall conditions consistent with those complained of by plaintiff.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen, 100 F.3d at 1467; see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at

919.  However, the only lay witness evidence contained in the record are a field office report, AT 60, and two third-party questionnaires completed by plaintiff's friend and plaintiff's sister, AT 64, 78.  Such documentary evidence is not testimony.

Testimony is "a statement made by a witness, under oath, usually related to a legal proceeding or legislative hearing."  Barron's Law Dictionary, 521 (5th ed. 2003).  Written statements included as part of an initial application for benefits cannot be considered testimony.  The ALJ considered the entire record.  AT 13.  His failure to expressly discount the non-testimonial statements of third-party lay witnesses was not in error.  Unlike other forms of evidence, there is no requirement to consider third party, lay witness statements.  Compare 20 C.F.R. § 416.913(e)(2)(third party evidence may assist the ALJ in reaching his decision) with 20 C.F.R. § 416.913(a)("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).)

Furthermore, even if the unsworn statements by lay witnesses were considered testimony, the failure to discuss them in this case would be harmless error.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)(holding that harmless error applied after ALJ failed to discuss plaintiff's son's testimony because decision was supported by substantial medical evidence).  Neither third-party in this case describes any different or greater level of impairment than that testified to by plaintiff.  In fact, as noted above, plaintiff's friends occasionally describe plaintiff's impairments in less severe terms than plaintiff does.  Consequently, it is difficult to see how the ALJ's failure to explicitly accept or reject their testimony affected his ultimate decision.  See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)(holding that "although specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal" when the ultimate findings are supported by substantial evidence in the record).

The ALJ need not expressly discuss all evidence in the record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill. 1991). Requiring an ALJ to credit or discredit every piece of evidence in an administrative record would be an "impossible burden." Id. Given the nature of the third-party questionnaire, and the ability of plaintiff's to call witnesses at their administrative hearing, the failure to consider evidence provided by the lay witnesses was not in error.

The factors considered by the ALJ in his evaluation of plaintiff and the third-party lay witnesses were all valid and supported by the record. The ALJ's credibility determination was based on permissible grounds. The failure to expressly discuss the lay witness testimony was not in error. The findings of the ALJ in this regard will not be disturbed.

c. The ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work was in Error.

The ALJ found that plaintiff's depression and borderline intellectual functioning limited plaintiff to "simple, routine unskilled work." AT 12. Given the nature of plaintiff's prior employment history, the ALJ found her capable of performing her past relevant work as a hospital cleaner. AT 13. This finding is not supported by substantial evidence in the record.

Plaintiff's former job cleaning at the hospital is classified in the Dictionary of Occupational Titles[3] (DOT) as hospital maintenance, an unskilled, medium exertion job with DOT code # 318.687-618. AT 90. In her particular job, plaintiff stated that she could walk for up to four hours in an eight hour workday, and carried garbage that occasionally weighed up to 20 pounds, and frequently weighed 10 pounds. AT 52. Plaintiff offered no evidence that this particular unskilled job exposed her to any unusual conditions.

As discussed above, the ALJ failed to weigh the medical evidence and improperly

---

[3] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT") is relied on routinely by the Social Security Administration "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

evaluated the findings of Dr. Koulianos. The ALJ failed to recognize the full extent of the limitations Dr. Koulianos placed upon plaintiff's skills, including her uncertain ability to routinely execute simple and uncomplicated one and two step instructions and her variable ability to manage transitions or minor stressors in the workplace. By its very nature, a deficiency in these areas necessarily affects the ability to perform unskilled work. Consequently, the ALJ's determination that plaintiff could continue to perform her past relevant unskilled work is not supported by substantial evidence in the record. Remand is required in order to permit the ALJ to continue the sequential analysis upon completion of his evaluation of the medical evidence in this case.

      d.  <u>The ALJ's Failure to Consult a Vocational Expert was in Error.</u>

After concluding that plaintiff was capable of performing her past relevant work, the ALJ ended the sequential analysis. By not reaching step five in the sequential analysis, there was no need for the ALJ to consult a vocational expert. While it is impossible to determine the need for a vocational expert without a complete analysis of the facts of each particular case, the ALJ's error in evaluating the medical evidence taints his sequential evaluation. If necessary, the ALJ may reach step five during his subsequent evaluation following remand.

Plaintiff contends that because of her nonexertional limitations, including an uncertain ability to execute simple and uncomplicated one and two step instructions and her variable ability to manage transitions or minor stressors,[4] it was incumbent upon the ALJ to obtain the testimony of a vocational expert. However, an ALJ is not required to consult a VE every time a plaintiff has mental impairments. Only where the sequential analysis proceeds to

---

[4] Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations. <u>Desrosiers v. Secretary of Health & Human Services</u>, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P, Appendix 2, § 200.00(e).

the final step,[5] is vocational expert testimony required when significant nonexertional impairments exist.  Significant nonexertional impairments include poor vision, an inability to tolerate dust or gases, and pain.  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); Kail v. Heckler, 722 F.2d 1496 (9th Cir. 1984); see e.g. Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).

        The ALJ is charged with determining the applicability of the Medical-Vocational Guideline ("the Grids") or the need for a VE.  That step was not reached in this case because the sequential analysis stopped upon a finding by the ALJ found plaintiff could perform her past relevant work as a hospital cleaner.  Remand is appropriate in order to permit the ALJ to continue the sequential analysis and make the necessary findings in light of the medical evidence in the case

        For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

        Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment is denied;

    2. The Commissioner's cross motion for summary judgment is denied; and

    3. This matter is remanded for further proceedings consistent with this order.

DATED:  July 21, 2006.

                        /s/ John F. Moulds
                        UNITED STATES MAGISTRATE JUDGE

13
Edwards.ss.wpd

---

[5] In this case the eighth step of the sequential analysis.  See 20 C.F.R. § 404.1594(f)(8).